UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ERIC VAN TINE by and through its successor-in-interest CAROLE VAN TINE and CAROL VAN TINE, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, KELLY MARTINEZ, in her individual capacity, RICH WILLIAMS, and DOES 1-53, <br><br> Defendants. | No.:  25-cv-1403-LL-BLM <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** <br><br> **[ECF No. 9]** |

Before the Court is a Motion to Dismiss filed by Defendants County of San Diego, Sheriff Kelly Martinez, and Undersheriff Rich Williams (collectively "Defendants"). ECF No. 9. The Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendants' Motion to Dismiss is **DENIED** for the reasons set forth below.

## I.    BACKGROUND

Plaintiffs allege that on December 2, 2023, decedent Eric Van Tine, a pretrial detainee with bipolar disorder and in acute psychosis, was booked into San Diego Central Jail. ECF No. 1 at 1. He was housed in a triple-bunk cell with two other men, including

25cv1403-LL-BLM

Walt Mehran, who had a recent felony assault and a history of violence known to jail staff. ECF No. 1 at 1, ¶¶ 4-5, 40-42, 50, 54-55. Mehran and Mr. Van Tine argued that day, and later while Mr. Van Tine slept, Mehran allegedly dragged him from his bunk and beat him unconscious. *Id.* ¶¶ 57-58. Plaintiffs further allege that control-tower deputies muted or ignored emergency intercom calls (or placed the intercom on "bypass"), failed to respond despite video visibility, and that housing deputies did not conduct random Title 15 security checks. *Id.* ¶¶ 56, 59-61. Mr. Van Tine remained in a coma for over three months, developed complications across multiple facilities, and ultimately died on November 6, 2024. *Id.* at ¶¶ 62-69, 75-78.

On June 3, 2025, Plaintiffs filed a Complaint against Defendants alleging nine causes of action as follows: (1) Deliberate Indifference pursuant to 42 U.S.C. § 1983; (2) Failure to Properly Train, Supervise and Discipline pursuant to 42 U.S.C. § 1983; (3) *Monell* violation pursuant to 42 U.S.C. § 1983; (4) Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. § 12101, *et seq.*; (5) Rehabilitation Act pursuant to 29 U.S.C. § 794(a); (6) Right of Association pursuant to 42 U.S.C. § 1983; (7) Violation of California Civil Code § 52.1 (the "Bane Act"); (8) Negligence; and (9) Wrongful Death pursuant to CCP § 377.60. ECF No. 1.[1]

---

[1] The Court notes that not every cause of action was brought against every Defendant. The first cause of action for Deliberate Indifference was brought against Defendants Does 1-26, 37-46; the second cause of action for Failure to Properly Train, Supervise and Discipline was brought against Defendants Martinez and Williams and Supervisory Doe Defendants 27-36 and Medical Supervisory Does 47-51; the third cause of action for the *Monell* claim was brought against Defendant County of San Diego and Does 52-53; the fourth and fifth causes of action for ADA and Rehabilitation Act violation was brought against Defendant County of San Diego; the sixth cause of action for Right of Association

25cv1403-LL-BLM

On July 16, 2025, Defendants County of San Diego, Kelly Martinez and Rich Williams, filed the instant Motion to Dismiss. ECF. No. 9-1. On August 6, 2025, Plaintiffs filed their Opposition, and on August 13, 2025, Defendants filed their Reply. ECF Nos. 10, 11.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough facts to provide "fair notice" of both the particular claims being asserted and "the grounds upon which [those claims] rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007).

In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

was brought against Does 1-51; the seventh and eighth causes of action for Bane Act Violation and negligence was brought against all Defendants; the ninth cause of action for wrongful death was also brought against all Defendants. *Id.*

25cv1403-LL-BLM

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III.   REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, the Court will address the requests for judicial notice brought by each party. Defendants request that the Court take judicial notice of two records identified and incorporated by reference in Plaintiffs' Complaint: (1) the San Diego Police Department's Probable-Cause Declaration for Eric Van Tine's December 2, 2023 arrest, and (2) a Government Tort Claim by the Estate of Van Tine, dated January 3, 2025.  ECF No. 9-2. Defendants identify these materials as public records and request that the Court incorporate them by reference in Plaintiffs' Complaint. *Id*. at 2-3. Plaintiffs request that the Court take judicial notice of two letters issued by the California Board of State and Community Corrections ("BSCC") to Sheriff Kelly Martinez. ECF No. 10. The first letter is dated October 13, 2023, and is regarding the BSCC's comprehensive inspection of the San Diego County Detention Facilities, and the second letter is dated February 13, 2025 and is regarding the BSCC's targeted inspection of the San Diego Central Jail. *Id.* Both letters are published on the BSCC's official website. *Id.*

Facts proper for judicial notice are those not subject to reasonable dispute and either "generally known" within the Court's territorial jurisdiction or "capable of accurate and ready determination" by reference to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid 201. Here, the Court is aware that some of the matters discussed in the parties' exhibits may be disputed. The Court may however take judicial notice of the underlying docket reports, orders, and other pleadings limited to their existence as matters of public record. Accordingly, the Court **GRANTS** both parties' requests for judicial notice. *See Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (explaining that it is appropriate to take judicial notice of court filings and other matters of public record, such as pleadings in related litigation).

/ / /

/ / /

## IV.   DISCUSSION

Defendants raise several arguments that the Complaint should be dismissed including: (1) Plaintiffs fail to state a claim against Sheriff Martinez and Undersheriff Williams under the failure to train theory of liability under 42 U.S.C. § 1983; (2) Sheriff Martinez and Undersheriff Williams are entitled to qualified immunity even if Plaintiffs sufficiently pled a constitutional violation that caused decedent's harm; (3) Plaintiffs' *Monell* claim against the County fails because it has not and cannot allege that the alleged constitutional violation was the result of a "longstanding practice or custom;" and (4) Plaintiffs fail to state a claim for violation of the ADA, the Rehabilitation Act, the Bane Act, and negligence because they lack facts to state a claim. Motion at 10-24. In support of their Motion, Defendants state that Plaintiffs rely on unrelated events, offer a "laundry list" of alleged deficiencies, and do not plausibly allege a policy or custom (or training omission) that was the moving force behind the assault and ensuing death of Eric Van Tine. *Id*. Construing the allegations in the light most favorable to Plaintiffs at this stage, the Court **DENIES** the Motion for the reasons set forth below.

### A. 42 U.S.C. § 1983 Claims (Claims 1-3)

The Complaint asserts three federal civil rights claims for (1) Deliberate Indifference pursuant to 42 U.S.C. § 1983 against Does 1-26, 37-46; (2) Failure to Properly Train, Supervise and Discipline pursuant to 42 U.S.C. § 1983 against Defendant Martinez, Supervisory Doe Defendants 27-36 and Medical Supervisory Does 47-51; and (3) *Monell* violation pursuant to 42 U.S.C. § 1983 against County of San Diego and Does 52-53. Complaint ¶¶ 185-280. Defendants move to dismiss these claims for failure to state a claim. Motion at 10-17. The Court addresses each of these claims below.

#### 1. Deliberate Indifference pursuant to 42 U.S.C. § 1983 against Does 1-26, 37-46

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of [his] federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive

25cv1403-LL-BLM

rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* "[T]he statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff." *Kiger v. Johnson*, No. 23CV1263KJMDBP, 2024 WL 345978, at *2 (E.D. Cal. Jan. 30, 2024).

Pretrial detainees who have not been convicted of any crime have a due process right under the Fourteenth Amendment to be free from violence from other inmates. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners because corrections officers have stripped the inmate of virtually every means of self-protection and foreclosed their access to outside aid." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (internal quotations omitted). A pretrial detainee bringing a Fourteenth Amendment claim against an individual for failing to protect them from violence while in custody must establish: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable. *Lucas v. Cnty. of San Diego*, No. 20-CV-1735-CAB-JLB, 2021 WL 568787, at *3 (S.D. Cal. Feb. 16, 2021) (citing *Castro*, 833 F.3d at 1071).

Defendants move to dismiss Plaintiffs' first cause of action for failing to state a claim for deliberate indifference. Motion at 11-13. Defendants argue that "the Complaint makes no effort to specify how the [alleged] failure[s] arose to the level of deliberate

25cv1403-LL-BLM

indifference." *Id*. at 13. Reading these facts in the light most favorable to Plaintiffs, Plaintiffs have stated a claim against Defendants for deliberate indifference. *See San Carlos Apache Tribe v. Becerra*, 53 F. 4th 1236, 1239 n. 2 (9th Cir. 2022).

For example, Plaintiffs state that Defendants knew that "Mehran had multiple assaultive charges and had been arrested for assaulting another victim" and that "Defendant Does 11-21 knew Mehran was violent and a danger to himself and others." Compl. ¶¶ 89, 93.Similarly, Plaintiffs allege that "Defendants ignored Eric's lengthy and well documented history of mental illness which resulted in his threatening others." *Id*. ¶ 189. Plaintiffs adequately allege at this procedural posture that Does 11-21 knew of a prior incident between Mehran and Mr. Van Tine and had a responsibility to advise JPMU deputies about Mehran's continual danger and Mr. Van Tine's provocative behavior. *Id*. ¶ 94. Plaintiffs state that Defendants "had an obligation [to] know[] that Mehran and Eric had been involved in a confrontation to move either or both of them out of the triple cell." *Id*. ¶ 95. Plaintiffs state that "either deputies failed to advise JPMU deputies regarding the alarming incident or the JPMU staff failed to take proper action to classify or reclassify Mehran." *Id*. ¶ 96. Plaintiffs plausibly allege that "Doe defendants who conducted cell checks in the module failed to comply with Title 15 which requires that the checks be conducted at random and at a minimum every 60 minutes of each incarcerated person." *Id.* ¶ 202. Instead, Plaintiffs allege that "the cell checks [were] conducted at random intervals, [so] predators can time their attacks by watching for the last cell check." *Id.* Plaintiffs plausibly allege that "had Defendant Does followed their policies and procedures, Mehran would have been properly classified and housed by himself or in a cell where he could be monitored." *Id.* ¶ 97. Plaintiffs state that "Defendants had a legal duty to protect Eric Van Tine from foreseeable harm" in light of the "'special relationship' between a jailer and a prisoner which imposes a duty on prison officials to protect prisoners from foreseeable harm by other prisoners." *Id*. ¶ 98. Thus, Plaintiffs allege, "Defendants' failure to properly classify and house Mehran and Eric Van Tine led to the foreseeable harm of Mehran attacking Eric and killing him." *Id.* ¶ 99. Accordingly, Plaintiffs state that "Defendants

25cv1403-LL-BLM

acted with deliberate or reckless disregard of decedent's constitutionally protected rights." *Id.* ¶ 208.

Defendants summarily argue that "Plaintiff[s] ha[ve] not alleged how any of these purported failures to train resulted in the constitutional harm alleged, nor how the alleged lack of training amounted to callous indifference to the rights of others." Motion at 13. For example, Defendants argue that "[t]hough the Complaint does conclude that 'Doe Defendants failed to conduct proper cell checks at random,' it does not explain how this was the moving force behind the alleged constitutional violation.'" *Id.* at 18 (citing Compl. ¶ 56). Defendants argue that "there are no facts to support how this alleged custom or practice was the moving force behind Mehran's conduct." *Id*.

Upon the Court's review of the operative Complaint, Plaintiffs have plausibly alleged at this procedural posture that the harm that he experienced while in custody was created by Defendants' decisions as to Plaintiffs' conditions of confinement. Defendants had a duty to protect Mr. Van Tine from an attack by Mehran, and Plaintiffs plausibly allege that Defendants' failure to fulfill that duty by taking reasonable preventative measures resulted in his eventual attack. Accordingly, Plaintiff's' allegations are legally sufficient to establish a Section 1983 claim against Defendants for deliberate indifference for failure to protect him from violence while in custody.

### 2. Failure to Properly Train, Supervise and Discipline pursuant to 42 U.S.C. § 1983 against Defendant Martinez, Supervisory Doe Defendants 27-36 and Medical Supervisory Does 47-51

Defendants argue that "the Complaint fails to state a claim against Sheriff Martinez and Undersheriff Martinez under a 'failure to train' theory of liability." Motion at 11. Specifically, Defendants argue that:

> There are no facts to support that either Sheriff Martinez or Undersheriff Williams had any knowledge of either Decedent or Mehran, or their housing classifications and subsequent altercation. It is insufficient for Plaintiff to allege that either Williams or Martinez failed to train the deputies under their supervision without articulating what type of training was deficient and how it could have prevented the harm. . . . Plaintiff's allegations of past incidents

are wholly immaterial to this case and in no way evidence the requisite pattern of violations necessary for this claim against Sheriff Martinez and Undersheriff Williams. . . . Overall, Plaintiff has not alleged how any of these purported failures to train resulted in the constitutional harm alleged, nor how the alleged lack of training amounted to callous indifference to the rights of others. Even if any one of these areas had any relevance to Plaintiff's alleged harm, the Complaint makes no effort to specify how the failure arose to the level of deliberate indifference.

Motion at 13.

Plaintiffs contend that they have sufficiently alleged a failure to properly train, supervise and discipline claim against Defendants Martinez, Williams, the Supervisory Doe Defendants 27-36, and Medical Supervisory Does 47-51. Oppo. at 9-11. Plaintiffs argue the Complaint "contains pages of specific factual allegations against Defendants Martinez and Willias showing they knew of the patterns and problems plaguing their jails but did nothing to fix them." Oppo. at 11. Specifically, Plaintiffs state:

As alleged, Martinez and Williams have been aware of the pervasive pattern of inmates dying in their institutions. Complaint, ¶ 100. On February 3, 2022, the California State Auditor published a report ("Auditor Report") detailing the San Diego County Sheriff's failure to prevent and respond to inmate deaths. *Id.* ¶ 105.

From 2006 through 2020, 185 people died in San Diego County's jails – one of the highest totals among counties in the State. The high rates of deaths in San Diego County's jails compared to the other counties raises concerns about underlying systemic issues with the Sheriff's Department's policies and practices. In fact, our review identified deficiencies in how the Sheriff's Department provides care for and protects incarcerated individuals, which likely contributed to in-custody deaths. In fact, our review identified deficiencies in how the Sheriff's Department provides care for and protects incarcerated individuals, which likely contributed to in-custody deaths. Auditor Report, available at: https://information.auditor.ca.gov/reports/2021-109/index.html#section. Complaint, ¶ 105.

The Sheriff's Department practice of triple-bunking inmates is known to be "likely to cause conflict." *Id.* ¶ 111. The Sheriff's Department acknowledged triple-bunking creates an unsafe environment for both staff and inmates. *Id.* ¶ 117. Martinez and Williams were aware that deputies were "corrall[ing]...crazy guys together." *Id.* ¶ 120-122. Even after the death of a

25cv1403-LL-BLM

mentally ill inmate because of this practice, nothing changed. *Id.* ¶ 118-122, 128-129. In 2021, the California Board of State and Community Corrections ("BSCC") issued a warning to the County regarding its noncompliance because of the use of triple bunks. *Id.* ¶ 124. Martinez and Williams were made aware by the BSCC and the Grand Jury that their practices were dangerous and noncompliant with the state requirements. *Id.* ¶ 128. Yet, nothing changed. *Id.* ¶ 129.

The Auditor's Report found that from 2010 to 2020, eight inmates in San Diego jails died by homicide at the hands of another inmate. *Id.* ¶ 131. In the past five years, seven incarcerated people have been killed by a bunkmate, with at least six of those deaths incorporating mental illness. *Id.* ¶ 132-133. The death of Dominique McCoy in 2021 was one of those deaths. *Id.* ¶ 136. McCoy was brutally beaten by his cellmate, Medina. *Id.* Medina was known to be violent and prone to assaulting others. *Id.* The Citizen's Law Enforcement Review Board ("CLERB") generated a report following their investigation of McCoy's death and found that "the department failed to implement reasonable measures to prevent [Medina] from doing harm to others, a shortcoming that contributed to IP McCoy's death." *Id.* CLERB attributed the "lack of protection" to the department as a whole. *Id.* Defendant Martinez admitted she reviewed CLERB's findings, and her response was that the findings "were inappropriate against the entire Sheriff's Office." *Id.* ¶ 137. Martinez also reviewed the CLERB report detailing the death of inmate Derek Baker and made the same response after CLERB found Baker's death was, in part, because "SDSD failed to implement reasonable measures in housing two PC inmates, one an elderly low-level (3) sex offender with another, a high-level (5) violent offender." *Id.* ¶ 138. Martinez was also aware that SDSD was failing to properly classify and house inmates from the deaths of Russell Hartsaw, Lyle Woodward, Raymond Vogelman and Brandon Yates, along with the assault of Kristina Frost. *Id.* ¶ 133-143, 214-216.

Martinez and Williams were aware that their medical and mental health staff had been failing to properly classify and treat mentally ill inmates. *Id.* ¶ 132-133, 139, 141, 217, 219. Defendants knew their staff had been improperly placing inmates into mainline, disregarding the dangerous risk they posed to themselves and others. *Id.* ¶ 218. The supervisory defendants were aware that their subordinates had failed to admit Mehran into the PSU or to manage his serious and dangerous mental illness. *Id.* ¶ 220. These defendants took no action to remedy the misconduct. *Id.* ¶ 221.

25cv1403-LL-BLM

For years, Martinez and Williams were aware that their correctional staff were silencing inmates, neglecting intercom calls and, in some cases, allowing emergency buttons to remain entirely nonfunctional. *Id.* ¶ 144, 223. Martinez and Williams were made aware through CLERB, and the deaths or serious injuries of Richard Boulanger, Frankie Greer, Paul Silva, Robert Moniger and Derryl Dunsmore, among others. *Id.* ¶ 145-152. Defendants failed to train their deputies on proper use of intercom systems. *Id.* ¶ 224. Despite the knowledge that there was a *de facto* policy of deputies ignoring the written policies on intercom calls, the supervisory defendants did nothing to remedy or correct this pattern of misconduct. *Id.* ¶ 158, 225.

Martinez and Williams were aware that their correctional staff were failing to conduct proper cell checks. *Id.* ¶ 159, 226. They were aware that checks were not conducted timely or randomly. *Id.* ¶ 226. In 2023, over three months, only 79 of 223 reviewed safety checks were conducted in accordance with established policy and procedures. *Id.* ¶ 160-63. This is a 35% pass rate. *Id.* ¶ 164. Martinez and Williams were aware of the consistent failure to perform safety checks in accordance with Title 15 from the CLERB investigations into the deaths of Blake Wilson, Omar Moreno Arroyo and Saxon Rodriguez. *Id.* ¶ 167-169. They were aware of multiple instances in which deputies walked away from people in medical distress and left them to die. *Id.* ¶ 227. Mehran was able to time his assault and murder Eric because he knew that the cell checks were conducted at 60-minute intervals. *Id.* ¶ 228.

Plaintiffs have sufficiently alleged a § 1983 claim against the supervisory defendants for their failure to properly train, supervise and discipline their staff.

Oppo. at 11-13.

"A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks omitted). "Under the latter theory, supervisor liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

25cv1403-LL-BLM

force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).

The Court finds that Plaintiffs have sufficiently stated a claim for failure to properly train, supervise and discipline. Plaintiffs have alleged plausible facts concerning the nature of Defendants Martinez and Williams' deficient training, a history of constitutional violations to put Defendants Martinez and Williams on notice about the deficient training, and a causal connection between Defendants' Martinez and Williams' failure to train, supervise and discipline, and the alleged constitutional violations. The Complaint alleges that "Martinez and Williams were aware that their medical and mental health staff had been failing to properly classify and treat mentally ill inmates" and "for years, Martinez and Williams were aware that their correctional staff were silencing inmates, neglecting intercom calls and, in some cases, allowing emergency buttons to remain entirely nonfunctional." Oppo. at 11-12 (citing Compl. ¶¶ 132-133, 139, 141, 217, 218, 219, 220, 221, 144, 223). Plaintiffs also allege that Martinez and Williams "were made aware through CLERB, and the deaths or serious injuries of Richard Boulanger, Frankie Greer, Paul Silva, Robert Moniger and Deryl Dunsmore, among others." Oppo. at 13 (citing Compl. ¶¶ 145-152). As a result, the Court declines to dismiss Plaintiffs' Section 1983 failure to train, supervise or discipline claim against Defendants Williams and Martinez. Defendants' arguments are better suited for a motion for summary judgment when the record is more fully developed.

Defendants' argument that Plaintiffs fail to allege personal involvement of Sheriff Martinez and Undersheriff Williams is without merit. Motion at 10-13. Plaintiffs' Complaint alleges that Sheriff Martinez and Undersheriff Williams were final-level policymakers for jail operations, were repeatedly on notice of the practices identified above, and nevertheless acquiesced in continuation of those practices.  ECF No. 1 at ¶¶ 23-27, 100-05, 210-34.  Those non-conclusory allegations suffice to plead supervisory liability at this stage. Thus, Defendants' Motion is **DENIED** as to Plaintiffs' second cause of action.
/ / /

25cv1403-LL-BLM

### 3. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court must determine: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Addressing qualified immunity at this stage of the proceedings is not appropriate because the factual record is not developed regarding what knowledge Sheriff Martinez and Undersheriff Williams had regarding Mr. Van Tine's conditions of confinement and their involvement in the training and oversight of the Doe Defendants. "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016), quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts as true Plaintiffs' allegation that Defendants were deliberately indifferent in their failure to properly classify and house Mehran and Eric Van Tine. However, at this procedural posture, there is insufficient factual development with respect to the extent of their knowledge of the classification and cell checks and whether they took reasonable measures to abate the risk to Eric Van Tine. In sum, Defendants at this time have failed to show their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) ("If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then" granting qualified immunity on a motion to dismiss is prohibited and the case should proceed to summary judgment), quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992).

25cv1403-LL-BLM

Defendants' Rule 12(b)(6) Motion to Dismiss based on qualified immunity is **DENIED** without prejudice to its renewal on summary judgment.

### 4. *Monell* Claim

Plaintiffs' third cause of action is a *Monell* violation pursuant to 42 U.S.C. § 1983 against the County of San Diego and Does 52-53. Compl. ¶¶ 235-280. Defendants argue that "Plaintiffs' *Monell* claim against the County fails because it has not and cannot allege that the alleged constitutional violation was the result of a 'longstanding practice or custom.'" Motion at 15 (citing *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)). Defendants argue that Plaintiffs' theories of *Monell* liability fail, including (1) the County's failure to identify medical and mental health needs; (2) de facto policy of failure to properly classify and house violent inmates; (3) de facto policy of ignoring intercom calls; and (4) improper cell cells. Motion at 16-19.

A municipality may not be vicariously liable under § 1983 for an injury caused by its employee or agent. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* A plaintiff may recover under *Monell* under one of three theories. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id.* at 1249 (quoting *Monell*, 436 U.S. at 708). Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id.* Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1250 (internal quotations omitted).

Plaintiffs allege several interrelated practices collectively operated to cause the incident at issue: (1) triple-bunking in Type II cells despite Title 24's single or double-occupancy rule (Compl. ¶¶ 82-85); (2) misclassification and placement of violent and mentally ill detainees together, including allegations that Mehran should have been Level 6 and single-housed (*Id*. ¶¶ 86-97); (3) a de facto practice of muting or ignoring intercom calls or placing the system on "bypass," and failing to respond expeditiously (*Id*. ¶¶ 153-158); and (4) non-random Title 15 safety checks with poor compliance rates (*Id*. ¶¶ 160-66).

The Complaint further alleges longstanding notice to County policymakers through the State Auditor's report, CLERB's findings, BSCC's communications, internal audits, and prior bunk-mate homicides. *Id.* ¶¶ 100-141, 143-57, 160-71. The Complaint also includes figures and tables depicting San Diego's jail-mortality rates and the volume of inmate-on-inmate assaults. *Id.* ¶¶ 108-09. Taking these allegations as true, Plaintiffs have sufficiently stated specific customs and practices and have plausibly alleged that they were a moving force behind the alleged constitutional violation here.

Defendants respond that Plaintiffs' theory of liability relating to the intercom is a red herring unsupported by any factual allegations and that there is no plausible link between this practice and this assault. Motion at 18. Plaintiffs allege that Mr. Van Tine was asleep in a triple-bunked cell with a violent detainee; that deputies ignored or muted intercom calls and did not timely intervene despite video visibility; and that predictable checks allowed assailants to time attacks. Compl. ¶¶ 56-61, 82-97, 153-58, 170-71. These allegations, if true, are not labels as they go directly to causation and foreseeability. At this procedural posture, the Court finds that Plaintiffs' Complaint provides factual support that sufficiently alleges the existence of a specific custom or practice that was the moving force behind Plaintiffs' alleged violation. In sum, Plaintiffs have alleged facts to show the County has a custom or practice of housing violent and mentally ill detainees together in unsafe triple-bunk cells, failing to respond to emergency intercom calls, and conducting predictable, non-random safety checks, and that the County was on notice of this custom,

25cv1403-LL-BLM

and the custom was the moving force behind Plaintiffs' alleged violations. Accordingly, the County's Motion to Dismiss Plaintiffs' *Monell* claim is **DENIED**.

### B. ADA (42 U.S.C. § 12101, et seq.) and Rehabilitation Act (29 U.S.C. § 794(a))

To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) (the ADA is not violated by prison's failure to attend to medical needs of disabled prisoners) *rev'd on other grounds*, *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (*en banc*).

Similarly, to state a Rehabilitation Act claim, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *O 'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007). "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 and n.11 (9th Cir. 1999).

Plaintiffs allege that the County of San Diego is a public entity for purposes of the ADA and the Rehabilitation Act, and that it receives federal funding for purposes of the Rehabilitation Act. Compl. ¶¶ 176, 177. Plaintiffs further allege that booking, classification, and housing are services that the County provides. *Id.* ¶ 180. Plaintiffs further allege that Mr. Van Tine's bipolar disorder and acute psychosis were known or obvious, and that the County failed to provide reasonable accommodations by not placing him in monitored or psychiatric housing, or otherwise adjusting his classification and check intervals, thereby exposing him to a known risk of serious harm. *Id.* ¶¶ 172–84, 281–93, 288–91. At this

25cv1403-LL-BLM

procedural posture, those allegations are sufficient. Defendants' contention that the Psychiatric Stabilization Unit (PSU) is limited to inmates "needing hospitalization" or that the staff lacked the requisite knowledge to appropriately place Mr. Van Tine are not suitable for resolution on a Rule 12(b)(6) motion. Accordingly, Defendants' Motion to Dismiss Plaintiffs' ADA and Rehabilitation Act claims is **DENIED**.

### C. Right of Association (42 U.S.C. § 1983)

Defendants do not move to dismiss Plaintiffs' Right of Association Claim, so that claim will proceed.

### D. Bane Act, Cal. Civ. Code Section 52.1

Defendants move to dismiss the Bane Act claim on the grounds that Plaintiffs failed to allege that Plaintiff's constitutional rights were violated and that such interference was accompanied by threats, intimidation, or coercion. Motion at 22. Defendants argue that even if Plaintiffs adequately stated a claim under the Bane Act, the cause of action cannot be brought because of Plaintiffs' failure to comply with California's tort claim presentation requirements. *Id.* at 23. Defendants argue that the claim "reiterates Plaintiffs' boilerplate *Monell* allegations, most of which relate to the 'long history' of past issues.'" *Id.* at 25.

The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(b) & (c); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (the Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'").

"The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese*, 888 F.3d at 1043). "The specific intent inquiry for a Bane Act claim

is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017)). Facts demonstrating "reckless disregard" meet the burden of specific intent because "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Here, the Complaint has plausibly alleged a Section 1983 claim against Defendants for deliberate indifference for failure to protect Mr. Van Tine from violence while in custody. Plaintiffs allege volitional, coercive conduct—continuing triple-bunking despite warnings; misclassification; ignoring or muting emergency intercom calls; and failing to conduct random safety checks—that interfered with Mr. Van Tine's constitutional rights as a pretrial detainee. ECF No. 1 at ¶¶ 313–326. At the pleading stage, Plaintiffs are not required to allege "independent" threats separate from the coercive misconduct itself where deliberate indifference is asserted. *See Smith v. City of Marina*, 709 F. Supp. 3d 926, 939 (N.D. Cal. 2024) ("At the motion to dismiss stage, ... allegations of conduct that violates constitutional rights coupled with allegations that the conduct was done with reckless disregard for a party's rights can be sufficient to establish specific intent."). Accordingly, these allegations suffice to proceed.

Defendants also argue Plaintiffs' Bane Act claim was not fairly reflected in their government tort claim. Plaintiffs' allegations reflect that the January 3, 2025 tort claims described the same general set of circumstances (triple-bunking, misclassification, failures to monitor/respond, ADA/Rehabilitation, Bane Act). Liberally construed, that is adequate notice at this stage. Accordingly, the Defendants' Motion to Dismiss Plaintiffs' Bane Act claim based on a failure to fulfill the claims presentation requirements is **DENIED**.

/ / /

25cv1403-LL-BLM

## E. Negligence

Defendants move to dismiss Plaintiffs' negligence claim on the grounds that "Plaintiff[s] cannot allege facts sufficient to establish a legal duty owed by either defendant in their individual capacities" and that "there are no facts alleged that either defendant had any personal knowledge or involvement in the underlying incident." Motion at 21. Defendants also argue that "Plaintiffs' claim for negligence against Sheriff Martinez and Undersheriff [Williams] is also barred because they are immune under California law" because they are immune under Government Code § 820.2. *Id.* at 21-22. Defendants also argue that "under Government Code § 845.6, a public entity or public employee is generally 'not liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his [or her] custody.'" *Id.* at 22.

Here, the facts that give rise to Plaintiffs' negligence claim are similar to the facts that give rise to the deliberate indifference claim. For example, Plaintiffs allege that Defendants owed him a duty of care arising from the special relationship between a jailer and prisoner and that Defendants had a duty to comply with California state regulations on proper cell checks. Compl. ¶¶ 328, 332. Plaintiffs further allege that the "supervisory defendants failed to take action to ensure that the emergency button functioned in such a way that staff could not ignore the calls for immediate assistance." *Id.* ¶ 335. Plaintiffs allege that "by their acts, omissions, customs and policies, Defendants breached foregoing duties when they failed to prevent Mehran from assaulting Eric." *Id.* ¶ 339.

Prison officials owe a duty to pretrial detainees, and at this procedural posture, Plaintiff has adequately alleged how Defendants breached that duty to cause decedent's death. *See, e.g., Cotta v. Cty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017). As already outlined herein, the Complaint sets forth sufficient facts, at this posture, regarding the circumstances under which decedent was classified and how his injuries were foreseeable in light of the alleged policies and insufficient safety cell checks. Accordingly, Plaintiffs have sufficiently alleged the specific conduct, at this procedural posture, that formed the basis of Plaintiffs' negligence claim and how this alleged breach caused Decedent's injury

and eventual death.

Regarding Defendants' claims for immunity under Government Code § 820.2, this cannot generally be resolved at the motion to dismiss stage. *See, e.g., Martinez v. Cnty. of Sonoma*, No. 15cv1953-JST, 2015 WL 5354071, at *10 (N.D. Cal. Sept. 14, 2015). Pursuant to Government Code § 845.6, a public entity or public employee is generally not liable for an alleged injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody. However, there is a limited exemption to this immunity where a "public employee knows or has reason to know [of a] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical care." *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064 (E.D. Cal. 2018). Plaintiffs have alleged sufficient facts to meet this exemption at this procedural posture, including for example that "Defendants, Does 22-26, who were in the control tower ignored the calls for help or placed the intercom on 'bypass,' meaning they turned the sound off." Compl. ¶ 59. Plaintiffs further allege that "these defendants could see through the video feed what was occurring in the cell, but failed to timely respond." *Id.* ¶ 60. Plaintiffs allege that "as a result, deputies failed to intervene to stop the assault or to timely provide critical emergency medical care." *Id.* ¶ 61. Plaintiffs further allege that "upon information and belief, Defendants ignored the calls for help by Eric Van Tine," and as a result, "Defendants breached their duties pursuant to California Government Code § 845.6 when they had reason to know that Eric needed aid but failed to render timely emergency care." *Id.* ¶¶ 201, 340. These facts plausibly allege a claim and Defendants' Motion to Dismiss Plaintiffs' negligence claim is **DENIED**.

### F. Wrongful Death (CCP § 337.60)

Defendants do not move to dismiss Plaintiffs' Wrongful Death Claim, so that claim will proceed.

/ / /

/ / /

/ / /

25cv1403-LL-BLM

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss the Complaint. ECF No. 9.

**IT IS SO ORDERED.**

Dated:  March 23, 2026

_____
Honorable Linda Lopez
United States District Judge

25cv1403-LL-BLM